UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES B.,[1]

        Plaintiff,

   v.

NANCY A. BERRYHILL,

        Defendant.

Case No. 17-cv-06794-TSH

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 27, 32

## I. INTRODUCTION

Plaintiff James B. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, denying his claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. ECF Nos. 27 (Pl.'s Mot.), 32 (Def.'s Mot.). Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion for the following reasons.

## II. BACKGROUND

### A. Age, Education and Work Experience

Plaintiff is a 37-year old resident of Alameda County, California with a history of learning and conduct problems. AR 854. As a child, he was beaten with belts and switches but "was wild

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

and careless and laughed when he was beaten." *Id.* Plaintiff attended special education classes for dyslexia and briefly attended Laney College's culinary program. AR 82, 809, 855. He has had jobs in construction, painting and warehouse work. AR 855. Plaintiff also worked for a brief time as a line bagger at Revolution Foods, "tak[ing] stuff from one spot and put[ting] it on the line." AR 83-84.

Plaintiff has been incarcerated multiple times for violence, including assault and rape, both as a youth in the juvenile justice system and later in state prison as an adult. AR 809, 854-55. His parole was repeatedly extended "due to his short temper and inappropriate behaviors with the parole officer and judges" and he "reportedly cursed his parole officer out and threatened to throw things in the court room." AR 855.

## B. Medical Evidence

Exhibit 1F consists of records from Alameda County Sheriff's Department, Prison Health Services, dated September 25-30, 2006. AR 350-68. The records primarily consist of Plaintiff being treated for various conditions, including anxiety. AR 351-55. His symptoms included chest pain, facial numbness, vomiting and shortness of breath. AR 359.

Exhibit 2F consists of additional records from Alameda County Sheriff's Department, Prison Health Services, dated September 26, 2006 to January 8, 2008. AR 369-412. These records begin with medication lists from August 2007 through March 2008, indicating Plaintiff was diagnosed with asthma and hypertension and prescribed various medications. AR 370-83. An intake form dated July 15, 2007 indicates Plaintiff did not appear agitated, depressed, confused, or developmentally delayed. AR 411. The records also contain results of a blood test, an X-ray for a hand injury that was negative for acute findings, as well as medical request forms completed by Plaintiff between August 2007 and January 2008. AR 385-408.

Exhibit 3F consists of records from the California Department of Corrections and Rehabilitation, San Quentin State Prison, dated from March 13, 2008 to October 15, 2009. AR 413-74. The records include mental health evaluation notes, psychiatrist progress notes, and case manager progress notes. AR 441-74. On March 13, 2008, Plaintiff reported being diagnosed with Attention Deficit Disorder and leaving school prior to graduating in the 12th grade. AR 442. He

also reported daily use of marijuana, "as much as I can buy," and ecstasy "3x week and all weekend till now." *Id.* He reported situational depression and sleep disturbance. AR 444. Plaintiff was diagnosed with polysubstance dependence and assessed a GAF[2] of 69, but the provider found he did not meet the criteria for mental health inclusion. *Id.* A September 17, 2008 note indicates a provisional diagnosis of Anxiety Disorder, but also indicates Plaintiff had no complaints or medication side effects, his sleep and appetite were okay, his grooming and hygiene were average, he was goal directed, his judgment and insight were average, and that he was assessed a GAF score of 65. AR 455. A note from October 15, 2009 indicates Plaintiff was experiencing nightmares about being shot and killed. AR 447. The note refers to Plaintiff's depression as an antecedent to substance dependence. *Id.* The treatment note also indicates Plaintiffs' mood and affect were sad but his depression was stable, he was alert and oriented, his hygiene and grooming were good, his thought process was clear and linear, his judgment and insight were fair, his memory and concentration were intact, he denied any medical concerns, he did not exhibit psychosis, and he was goal directed and isolated himself to avoid trouble and get released on time. *Id.* Other notes indicate suicidal ideation, dysphoric mood, flat affect (AR 454), "slightly slovenly, and somewhat malodorous' (AR 461), and a prescription for Remeron to treat depression (AR 470).

Exhibit 4F contains additional records from the California Department of Corrections and Rehabilitation, San Quentin State Prison, dated from January 16, 2009 to January 25, 2010. AR 475-552. These records are chart notes and medication lists, indicating Plaintiff was being treated for asthma, hypertension, hyperlipidemia, a mental health disorder, rhinitis and skin rashes; and medicated with aspirin, Flovent, hydrochlorothiazide, Lisinopril, mirtazapine (Remeron), simvastatin, verapamil, and fluocinolone. AR 474-532. A chart note from October 29, 2009 indicates Plaintiff sought medical treatment because he was experiencing nightmares. AR 533.

_____

[2] A Global Assessment of Functioning ("GAF") score is a numerical summary of a clinician's judgment of an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health on a scale of one hundred. *See* Diagnostic and Statistical Manual of Mental Disorders, 32-34 (4th ed. text rev. 2000). A GAF score of 61-70 represents some mild symptoms or some difficulty in social, occupational, or school functioning.

He denied medication side effects, his appetite was normal, he was alert and oriented, his grooming and hygiene were adequate, his speech was normal and goal directed, his associations were intact, his mood was mildly low with congruent affect, he denied hallucinations, and his judgment and insight appeared average. *Id.* The provider assessed a GAF score of 65. AR 533.

Exhibit 5F contains additional records from Alameda County Sheriff's Department, Prison Health Services, dated January 2, 2007 to March 10, 2011. AR 553-600. These records are chart notes indicating treatment for hypertension and asthma. AR 570. A November 26, 2007 note also indicates a diagnosis of Attention Deficit Disorder. AR 566. A December 12, 2007 note indicates Plaintiff complained of insomnia. AR 576.

Exhibit 6F contains additional records from Alameda County Sheriff's Department, Prison Health Services, dated February 3, 2011 to August 16, 2012. AR 601-47. The records reflect ongoing treatment and medication for hypertension, hyperlipidemia, asthma, and depression. AR 610. The notes also indicate that although Plaintiff reported a history of mental health disorders, he denied mental health symptoms, denied a history of special education, and denied having a learning disability. AR 613.

Exhibit 7F contains additional records from Alameda County Sheriff's Department, Prison Health Services, dated August 9, 2012 to October 7, 2012. AR 648-710. The records also reflect ongoing treatment and medication for hypertension, hyperlipidemia, asthma, and depression. *Id.*

Exhibit 8F contains records from the California Department of Corrections and Rehabilitation, Parole Outpatient Clinic, dated February 3, 2010 to April 11, 2013. AR 711-31. These records consist of individual and group therapy progress notes (AR 711-18) and a February 3, 2010 mental health evaluation conducted by Francesca Biffi, LCSW. AR 728-31. Ms. Biffi indicated Plaintiff was alert and oriented to time, person, and place; he was cooperative, attentive, and pleasant; his speech was clear, organized, and had no abnormalities; his thought process and content were normal; he was calm with no unusual behaviors; his concentration was sufficient and he could follow instructions; he had fair long-term memory; his fund of knowledge was average and appropriate for his educational level; and he denied auditory or visual hallucinations. AR 729. Ms. Biffi noted Plaintiff had poor insight and judgment and refused to take responsibility for his

crime of rape. *Id.* She also noted he reported starting to drink alcohol at the age of 11 and using marijuana at the age of 12. AR 730. Ms. Biffi diagnosed Plaintiff with Sexual Abuse of Adult; Polysubstance Dependence; Alcohol Abuse; and Antisocial Personality Disorder. AR 728. A November 5, 2012 chart note completed by psychiatrist James Dotson, M.D., indicates Plaintiff was diagnosed with Bipolar Disorder after getting into fights in jail. AR 712. A July 16, 2012 chart note also completed by Dr. Dotson diagnosed Plaintiff with provisional Depressive Disorder NOS. AR 722. Dr. Dotson indicated Plaintiff's medications were effective for depression and he had no side effects aside from increased appetite. *Id.*

Exhibits 9F and 10F are records from the Emergency Department of Alameda Medical Center, dated October 16, 2005 to May 27, 2013. AR 732-806. The records reflect treatment in the ER for injuries caused by being stabbed in 2005 (AR 772), hematuria and a wrist injury in 2012 (AR 736, 794), and a hand injury, back pain and asthma in 2013 (AR 765, 800).

Exhibit 11F is a psychological evaluation by Jonathan Howard, Psy.D., dated September 16, 2013. AR 808-11. Dr. Howard diagnosed Plaintiff with "Mood Disorder, NOS, with depressed, anxious, and reported angry and labile features, and reported auditory hallucinations; Rule out Psychotic Disorder, NOS; Marijuana dependence, in remission (by claimant's report);" and a GAF of 58-60.[3] AR 810. Dr. Howard concluded that Plaintiff demonstrated "mild to moderate impairment in his ability to understand and carry out simple instructions and tasks;" "moderate impairment as the instructions and task become more complex;" "moderate impairment in his ability to attend and concentrate on usual work situations;" "moderate to marked impairment in his ability to interact effectively with supervisors, co-workers, and the public;" "mild to moderate impairment in his pace, his persistence of tasks, and his ability to perform activities within a schedule and maintain regular attendance;" and moderate to marked impairment in the ability to adapt to changes in a work setting. AR 811.

Exhibit 12F is a medical evaluation completed by Rose Lewis, M.D., dated September 23, 2013. AR 813-18. Dr. Lewis provided the following functional assessment:

---

[3] A GAF score of 51-60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning.

5

> The claimant can stand and walk up to six hours because of the exertional dyspnea. The claimant can sit without limitations. The claimant does not use assistive device. The claimant can lift and carry up to 100 pounds occasionally and 50 pounds frequently. The claimant is capable of climbing without limitations, balancing without limitations, stooping without limitations, kneeling without limitations, crouching without limitations, and crawling without limitations. The claimant is capable of reaching without limitations, handling without limitations, fingering without limitations, and feeling without limitations. The claimant has no limitations with working at heights. The claimant has limitations with working around heavy machinery because of his exertional dyspnea. The claimant has no limitations with working around extremes of temperature. The claimant has limitations with working around chemicals and working around dust, fumes and gasses because of the exertional dyspnea, asthma, wheezing and shortness of breath. The claimant has no limitations with working around excessive noise.

AR 816.

Exhibit 13F consists of records from the Emergency Room of Highland Hospital, dated December 26, 2013 to October 22, 2014. AR 819-53. The records consist of treatment for asthma and bronchitis in 2013 (AR 847) and hematuria twice in 2014 (AR 821, 837).

Exhibit 14F is a psychological evaluation by Lesleigh Franklin, Ph.D., dated June 6, 2015. AR 854-62. Elizabeth Walzer, MSW, Psy.D., is also listed as an examiner. AR 854. Dr. Franklin diagnosed Plaintiff with Bipolar Disorder II; Attention Deficit Disorder, Combined Type; Antisocial Personality Disorder; Borderline Intellectual Functioning; Asthma; Obesity; Hypertension; Hyperlipidemia; and a Personal History of Physical Abuse in Childhood. AR 861. Dr. Franklin provided the following functional assessment:

> If Mr. Plaintiff were to be placed in a work situation at this time he would likely have moderate difficulties remembering and carrying out simple directions, and marked difficulties remembering and carrying out complex directions. He would have marked problems with attention. He would have moderate difficulties completing tasks correctly at an adequate pace. He would have moderate trouble getting along with the public and co-workers, but he would likely have extreme trouble with authority when things were not going his way. Mr. Plaintiff would likely have marked difficulties completing a normal workday without intrusive psychological symptoms, and marked problems getting to work on time or at all.

AR 861-62. In a chart indicating Plaintiff's mental abilities and aptitudes needed to do unskilled work, Dr. Franklin concluded he would have a moderate impairment in the ability to understand, remember and carry out very short and simple instructions; perform at a consistent pace without

an unreasonable number and length of rest periods; get along and work with others; and interact appropriately with the general public. AR 862. In the same chart, Dr. Franklin also concluded Plaintiff would have marked impairment in the ability to understand, remember and carry out detailed instructions; maintain attention and concentration for two hour segments; respond appropriately to changes in a routine work setting and deal with normal work stressors; complete a normal workday and workweek without interruptions from psychologically based symptoms; maintain regular attendance and be punctual within customary, usually strict tolerances; and an extreme impairment in the ability to accept instructions and respond appropriately to criticism from supervisors. *Id.*

Exhibit 15F consists of case management notes from the Parole Outpatient Clinic, dated June 13, 2013 to April 23, 2015. AR 863-66. A June 27, 2013 note from Dr. Dotson indicates a diagnosis of Bipolar, euthymic. AR 865. These notes also indicate Plaintiff was doing well on his medications, his mood was even, he did not have depression, anger problems, or mood swings, he did not have medication side effects, he was doing well on parole, and he was alert, polite, calm, and logical with normal speech. AR 865-66.

Exhibit 16F consists of records from the Emergency Room of San Leandro Hospital, dated December 3, 2014 to March 29, 2016. AR 867-86. These records document treatment for face and back pain secondary to a car accident in 2014 (AR 878), and for chest pain and hematuria in 2016 (AR 867).

Exhibit 17F consists of records from Lifelong Medical Care, dated July 6, 2015 to April 5, 2016. AR 887-925. These records are chart notes indicating ongoing treatment for hypertension, asthma, hyperthyroidism, and elevated hemoglobin and indicate Plaintiff was prescribed various medications. AR 891.

Exhibit 1A contains a Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment completed by State agency psychologist Michael Hammonds, Ph.D., dated October 22, 2013. AR 134-39. Dr. Hammonds concluded Plaintiff would have a mild restriction of activities of daily living; and moderate difficulties in maintaining social functioning and concentration, persistence and pace. AR 135. As to mental residual functional capacity, Dr.

Hammonds concluded Plaintiff would have a moderate limitation in the ability to carry out detailed instructions; moderate limitation in the ability to maintain concentration for extended periods; moderate limitation in the ability to interact appropriately with the general public; moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors; and moderate limitation in the ability to respond appropriately to changes in the work setting. AR 137-38. Dr. Hammonds opined that Plaintiff could maintain attention and concentration to perform simple tasks for two hours at a time; he could complete an 8-hour work day and a 40-hour work week; he could interact appropriately with co-workers and supervisors, but supervision "should be direct and nonconfrontational"; he would do best in an environment that did not require ongoing public contact but was capable of casual and infrequent contact to answer questions and provide service that was "not persistent"; he could adapt to routine changes and respond to directions in a work environment requiring simple, repetitive tasks; he "may" have difficulty adapting to new work situations but could adapt to predictable work environments; and he could attend work regularly, make work-related decisions, protect against safety hazards, and travel to and from work independently. AR 138-39.

Exhibit 4A contains a Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment completed by State agency psychologist Adrianne Gallucci, Psy.D., dated February 12, 2014. AR 151-52, 155-57. Dr. Gallucci concluded Plaintiff would have a mild restriction of activities of daily living and moderate difficulties in maintaining social functioning and concentration, persistence and pace. AR 151. As to his mental residual functional capacity, Dr. Gallucci concluded Plaintiff would have a moderate limitation in the ability to understand, remember and carry out detailed instructions; moderate limitation in the ability to maintain attention and concentration for extended periods; moderate limitation in the ability to interact appropriately with the general public; moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors; and moderate limitation in the ability to respond appropriately to changes in the work setting. AR 155-56. Additionally, Dr. Gallucci concluded Plaintiff would be able to remember work-like procedures; understand and remember simple instructions; maintain attention for two-hour segments; maintain attendance and be

8

punctual at the customary tolerances; sustain ordinary routine without special supervision; coordinate with others without being distracted by them; make simple work-related decisions; complete a normal workweek and workday without interruptions from psychologically based symptoms; perform consistently without unreasonable breaks; respond appropriately to criticism from supervisors; get along with co-workers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; and be aware of hazards and take precautions. AR 156-57.

### III. SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On May 24, 2013, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on May 1, 2006. AR 17. The Social Security Administration denied Plaintiff's claim on November 18, 2013, finding he did not qualify for disability benefits. AR 161-65. Plaintiff subsequently filed a request for reconsideration, which was denied on February 13, 2014. AR 169-74. On February 27, 2014, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 175-77.

**A.      Initial Hearing**

ALJ Bradlee S. Welton conducted a hearing on June 17, 2015. AR 78-128. Plaintiff testified in person at the hearing and was represented by counsel, Michael Wolchansky. AR 78. The ALJ also heard testimony from Vocational Expert Kenneth Ferra. *Id.*

**1.      Plaintiff's Testimony**

Plaintiff testified he did not graduate from high school or obtain a GED, but later attended culinary classes at Laney College. AR 82. He stopped attending classes at Laney College due to concentration difficulty. AR 83. Plaintiff worked as a line bagger for two months in 2014 but was fired because he was late to work "a lot." AR 83, 87. He also testified he had disagreements with co-workers "about six" times. AR 86.

Plaintiff testified that he has acid reflux, asthma and high blood pressure. AR 95, 98. He takes Remeron, Depakote, Lisinopril, Verapamil, Hydrochlorothiazide and aspirin, but his medication makes him feel "like a zombie" and makes it difficult for him to wake up. AR 87, 100. Plaintiff experiences anxiety "about everything." AR 103. He also experiences suicidal

thoughts and attempted suicide the year before the hearing by cutting himself.  AR 114.

Plaintiff testified that he feels anger almost every day and that anything can trigger it.  AR 121.  It makes him feel like isolating himself.  *Id.*  He testified he can focus on a task for five to ten minutes before losing concentration and that he experiences audio and visual hallucinations two to three times a week.  AR 111, 116.

### 2. Vocational Expert's Testimony

The vocational expert testified that the only prior employment he considered substantial gainful activity was Plaintiff's work as a line bagger.  AR 123.  He testified that the position was more accurately classified as material handler under Dictionary of Occupational Titles ("DOT") 929.687-030, 1991 WL 688174.[4]  The ALJ posed two hypotheticals to the vocational expert.  First, the ALJ presented the following hypothetical:

> Assume a hypothetical person the same age and education as the claimant, that being 31 years of age, with a limited education.  Further assume that this hypothetical person retains the capacity to occasionally lift and carry a maximum of 20 pounds frequently, lift and carry 10 pounds.  Can stand and walk with normal breaks for six hours out of an eight-hour workday; can sit for six hours out of an eight-hour workday; can occasionally climb ramps and stairs, ladders, ropes, scaffolds, stoop, kneel, crouch and crawl; and can frequently balance.
>
> The non-exertional limitations would be work limited to one to two step tasks in a low stress job with only occasional decision-making, only occasional changes in work setting, only occasional judgment required on the job with no production - - fast-paced production rate work required.  And no tandem tasks with coworkers. . . . Would such a person be able to do any of the work that the claimant has done in the past?

AR 123-24.  The vocational expert testified the description of activities would be compatible with Plaintiff's past work "as performed, not necessarily the material handler as described by the Department of Labor."  AR 124.  The ALJ next asked if "there are other jobs in the open labor

---

[4] The Dictionary of Occupational Titles by the United States Department of Labor, Employment & Training Administration, may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d) (1).  The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles." *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).

market that a person with these limitations could do." *Id.* The vocational expert responded there were two: Cleaner, DOT 323.687-014; and Laundry Worker, DOT 302.685-010. AR 124-25.

The second hypothetical from the ALJ had the same limitations as the first, but with the addition that the person would miss one or more days of work per month. AR 125. The vocational expert testified there would be no available jobs because "[f]or entry level unskilled activities, almost any time away from tasks is going to be unacceptable to an employer." AR 125-26. When examined by Plaintiff's attorney, the expert also testified there are no unskilled jobs available for a hypothetical individual who would be off task at least 25% of the time and none for a hypothetical individual who would be unable to interact appropriately with supervisors. AR 127.

## B.     Second Hearing

After Plaintiff's counsel requested an additional hearing to ask the vocational expert follow-up questions, ALJ Welton held a supplemental hearing on May 12, 2016. AR 34-77. Plaintiff was again represented by Mr. Wolchansky and the ALJ also heard testimony from another vocational expert, Christopher Salvo. AR 34.

### 1.     Plaintiff's Testimony

Plaintiff testified he did not work between the first and second hearings. AR 42. He testified he was fired from his line bagger job in 2014 for taking too many breaks and being late. AR 56. He stated he takes Depakote and Montelukast and his medication causes him to oversleep. AR 46, 57. He also experiences depression. AR 47.

### 2.     Vocational Expert's Testimony

The ALJ posed the following hypothetical:

> Assume a hypothetical person with the same age and education as the claimant with a - - that's with a high school education at 31 years of age. And further assume that this person can occasionally lift a maximum of 50 pounds; frequently lift and carry 25 pounds; can stand and walk with normal breaks for six hours out of an eight-hour workday; can sit for six hours out of an eight-hour workday; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can do no climbing of ladders, ropes, and scaffolds. . . . Must avoid concentrated exposure to fumes, dust, and other lung irritants; can do simple routine repetitive tasks in a low stress job environment requiring only occasional decision-making. Only

> occasional changes in work setting; only occasional requirements for exercising judgment; no fast-paced production work; and no interaction with the public; and no tandem tasks with coworkers. . . . And would such a person be able to do the job that he did at Revolution Foods?

AR 59-60. The vocational expert replied that the hypothetical person would be able to do the job. AR 60. The expert also responded that other jobs were also available, including Hand Packer (DOT 920.587-018), Small Products Assembler (DOT 706.684-022), and Production Assembler (DOT 706.687-010). AR 60-61. The ALJ then added a definition of occasional as used in the hypothetical to mean 1 to 33 percent of the day; the vocational expert responded the jobs would still be appropriate. AR 61-62.

The ALJ posed a second hypothetical:

> I'm going to make it now a light hypothetical; occasionally lifting and carrying a maximum of 20 pounds, that's occasionally, between 1 percent of the day up to 33 percent of the day, and frequently lift and carry 10 pounds. Can stand and walk with normal breaks for six hours out of an eight-hour workday. Same postural as before, occasional with no ladders, ropes, and scaffolds. Same avoiding concentrated exposure to fumes and dust and other lung irritants. And add to this a limitation to only frequent overhead reaching with the right major upper extremity; and then using all the same non-exertional limitations that I have you before. . . . Are there any jobs that would be available in the open labor market for a person with these limitations?

AR 62. The vocational expert responded that he would keep the small products and production assembler positions but eliminate the hand packer job. *Id.* The expert also added a Bench Assembler position (DOT 706.674-042). AR 63.

When questioned by Plaintiff's counsel, the vocational expert testified there would be no jobs available for the same hypothetical individual who would be off task at least 15% of the time (AR 67), 30 minutes late to work at least one day a week (AR 68), absent from work two or more days a month (AR 69), or who would be unable to respond appropriately to supervisors at least 15% of the time (AR 72).

## C. ALJ's Decision and Plaintiff's Appeal

On September 27, 2016, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. AR 14-28. This decision became final when the Appeals Council declined to review it

on September 29, 2017.  AR 1.  Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  On December 19, 2018, Plaintiff filed the present Motion for Summary Judgment.  On March 1, 2019, Defendant filed a Cross-Motion for Summary Judgment.

## IV.   STANDARD OF REVIEW

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g).  The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards."  *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted).  "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)).  The court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's conclusion.  *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).  However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ.  *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision.  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).  "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'"  *Id.* (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)).  A court may not reverse an ALJ's decision because of an error that is harmless.  *Id.* at 1111 (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).  "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'"  *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

# V. DISCUSSION

## A. Framework for Determining Whether a Claimant Is Disabled

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[5] 20 C.F.R. § 404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined Plaintiff performed substantial gainful activity for two months in 2014, earning a total of $3,393.33, which "was above substantial gainful activities levels per the Social Security Regulations." AR 19 (citing AR 277-84). The ALJ noted Plaintiff testified he came late because of side effects from his medications but noted "no such side effects were communicated to his treating doctors." *Id.* He also noted Plaintiff's testimony that he was fired "for taking too many breaks, oversleeping and arriving to work late," and that neither Plaintiff nor his attorney argued he lost his job secondary to his impairments. *Id.* However, as there had been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity, the ALJ proceeded to the next step. *Id.*

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20

---

[5] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe impairments: Mood Disorder, Marijuana Dependence, Hypertension, Asthma, and Obesity. AR 19.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 20.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined Plaintiff has the RFC to perform medium work[6] with the following exceptions:

> [C]laimant can occasionally lift a maximum of 50 pounds, and frequently lift and carry 25 pounds. He can stand and walk, with normal breaks, six hours out of an eight-hour workday, and sit for six hours out of an eight-hour workday. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He cannot climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to fumes, dusts, and other lung irritants. He can do simple routine and repetitive tasks in a job environment requiring only occasional decision-making, only occasional changes in work setting, and only occasional requirement for exercising judgment. He cannot perform fast-paced production work. He cannot interact with the general public and cannot perform tandem tasks with coworkers.

---

[6] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

AR 22.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4) (iv). Here, the ALJ determined Plaintiff could not perform past relevant work "because the demands of the claimant's past relevant work exceed the residual functional capacity." AR 26.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, Subpt. P, App. 2. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including the jobs provided by the vocational experts: hand packer, small products assembler, and production assembler. AR 27.

**B.      Plaintiff's Arguments**

Plaintiff raises four arguments in support of his motion: (1) the ALJ's rejection of treating and examining opinions in favor of non-treating and non-examining medical opinions is not based on substantial evidence; (2) the ALJ's RFC finding and resulting vocational expert testimony are not supported by substantial evidence; (3) the ALJ erred in failing to evaluate medical equivalence at the third step of the sequential evaluation process; and (4) the ALJ erred in evaluating Plaintiff's credibility by failing to consider the entire case record and provide clear and convincing reasons supported by the evidence.

///

///

## C. Medical Opinions[7]

In concluding Plaintiff could perform a range of medium work with the mental limitations in his RFC, the ALJ gave considerable weight to the opinions from the State agency psychologists (Drs. Hammonds and Gallucci) and little weight to the consultative examiners' opinions (Drs. Howard and Franklin). AR 25-26. Regarding Dr. Hammond and Dr. Gallucci, the ALJ noted:

> The psychological consultants opined that the claimant can perform simple tasks and maintain attention and concentration for two hours at a time, and sufficiently complete an eight-hour workday, 40 hours a week. He is capable of appropriate social interaction with co-workers and supervisors but would do best in an environment which does not require ongoing public contact. He is capable of casual and infrequent contact that would be required to answer questions and provide service that was not persistent. Supervision should be direct and non-confrontational. He is able to adapt to routine changes and respond to direction from others. The claimant may have difficulty adapting to new situations at work, but can adapt to predictable environments. He can attend work regularly, make work-related decision [sic], protect against work related safety hazards, and travel to and from work independently.

*Id.* The ALJ gave "considerable weight" to this assessment, finding Plaintiff's treatment notes generally find normal mental status, stable depression, and good response to medications. *Id.* at 26. The ALJ also found that "treatment gaps without evidence of psychological decompensation or deterioration further support the above residual functional capacity." *Id.*

Plaintiff argues this finding is "at odds" with his "long history of anti-social behavior, including multiple incarcerations for assault, rape, robbery and drug sales." Pl.'s Mot. at 9 (citing AR 855). He further argues that the ALJ's finding that his "longitudinal treatment notes generally find normal mental status, stable depression, and good response to medications" fails to take into account his other mental health diagnoses, including bipolar disorder, anti-social personality disorder and attention deficit disorder. *Id.* (citing AR 861). Plaintiff maintains that the record "documents an individual who has demonstrated extreme negative responses to authority, repeated

---

[7] Rules regarding the evaluation of medical opinion evidence were recently updated, but the updates were made effective only for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017). As Plaintiff's claim was filed on May 24, 2013, the Court evaluates the medical opinion evidence in his case under the older framework as set forth in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) and in Social Security Ruling 96-2p.

treatment for mental illness and intellectual impairment since childhood, and an ongoing inability to meet the demands of adulthood, including employment or taking care of his children." *Id.* (citing AR 855-56). In contrast to the State agency opinions, Plaintiff contends the opinions of Drs. Howard and Franklin "are by far the most thorough, detailed and nuanced in the entire record." *Id.*

In response, Defendant argues the ALJ correctly evaluated the medical opinions. Def.'s Mot. at 7.

### 1. Legal Standard

When determining whether a claimant is disabled, the ALJ must consider each medical opinion in the record together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *Algazzali v. Colvin*, 2016 WL 394009, at *6 (N.D. Cal. Feb. 1, 2016). In deciding how much weight to give to any medical opinion, the ALJ considers the extent to which the medical source presents relevant evidence to support the opinion. 20 C.F.R. § 416.927(c)(3). Generally, more weight will be given to an opinion that is supported by medical signs and laboratory findings, and the degree to which the opinion provides supporting explanations and is consistent with the record as a whole. 20 C.F.R. § 416.927(c)(3)-(4).

In conjunction with the relevant regulations, the Ninth Circuit "developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527). Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where an examining doctor's opinion is contradicted by another opinion, as in this case, an ALJ may reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### 2. Analysis

Having reviewed the record in this case, the Court finds the ALJ's decision is supported by substantial evidence. Contrary to the significant limitations that the consultative examiners

endorsed, the ALJ pointed out that the evidence showed Plaintiff responded well to medication, his mental impairments were stable, and his mental status examinations were largely normal.  AR 23-26, 719 (Plaintiff reported medications were helpful, he denied side effects, was doing well on parole, he was not depressed or agitated, and he was alert, polite, and calm with well-organized speech); AR 721 (Plaintiff was alert and oriented, he was polite and engaged in treatment, his behavior was appropriate; his speech was clear and organized, his mood and affect were normal, and he was calm with no delusions or other unusual behavior); AR 729 (Plaintiff was alert and oriented; he was cooperative, attentive, and pleasant; his speech was clear and organized; his thought process and content were normal; he was calm with no unusual behaviors; his concentration was adequate to follow instructions; he had fair long-term memory; his fund of knowledge was average and appropriate; and he denied hallucinations; AR 781-82 (Plaintiff was cooperative, his speech was clear, he was fully oriented, his affect was normal, and he responded appropriately to questions); AR 798-99 (same); AR 804 (Plaintiff was cooperative, alert, and oriented with clear speech); AR 821 (same); AR 837 (Plaintiff was cooperative, his speech was clear, he was fully oriented, his affect was normal, and he responded appropriately to questions); AR 850 (same); AR 889 (oriented to time, place, person, and situation, with appropriate mood and affect); AR 894 (same); AR 906 (same); AR 918 (same)).

In light of this evidence, the ALJ properly afforded considerable weight to the State agency physicians' opinions that Plaintiff could perform simple, routine work with additional limitations, since those opinions were consistent with his longitudinal treatment notes, his normal mental status examinations, his responsiveness to treatment, and evidence showing his mental impairments were stable.  AR 25-26.  For the same reasons, the ALJ appropriately discounted the significant mental limitations that the consultative examiners endorsed for being inconsistent with the evidence in the record as a whole.  *See* 20 C.F.R. § 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").  The ALJ recognized that Drs. Howard and Franklin examined Plaintiff, but also appropriately considered supportability and consistency with the record as a whole in affording greater weight to the State agency psychologists' opinions.  *See* 20 C.F.R. § 416.927(c); *Bray v. Astrue*, 554 F.3d 1219, 1221,

1227 (9th Cir. 2009) (ALJ properly rejected treating doctor's statements and instead relied on non-examining physician's opinion in assessing the claimant's RFC); *Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record").

The ALJ also identified other inconsistencies that undermined the consultative examiners' opinions. AR 25. As the ALJ noted, it did not appear that Plaintiff was entirely truthful with Dr. Franklin. *Id.* Although Plaintiff told Dr. Franklin that he last worked in 2012, he was no longer using marijuana, and he was receiving treatment through the Parole Outpatient Clinic, the evidence showed he worked in 2014, he was continuing to use marijuana, he was no longer receiving treatment through the Parole Outpatient Clinic in 2013, and there was little evidence of mental health treatment thereafter. AR 25; *see* AR 855-56. That Dr. Franklin reached her conclusions based on incomplete information was a relevant consideration in discounting her opinion. *See Ridgly v. Berryhill*, 706 F. App'x 365, 365-66 (9th Cir. 2017) (ALJ appropriately discounted opinions finding the claimant had marked limitations where evidence showed that the claimant did not accurately disclose her heroin use to evaluators); *Timothy C. v. Comm'r of Soc. Sec.*, 2019 WL 653811, at *10 (E.D. Wash. Feb. 15, 2019) ("An ALJ may properly reject a medical opinion that is rendered without knowledge of a claimant's substance abuse.") (citing *Coffman v. Astrue*, 469 F. App'x 609, 611 (9th Cir. 2012).

With respect to Dr. Howard's opinion, the ALJ noted that Plaintiff's outpatient treatment at the Parole Outpatient Clinic ended in 2013 but, even with gaps in his treatment, there was no evidence that his mental health deteriorated or that he experienced significant symptoms, contrary to the severe limitations that the consultative examiners assessed. AR 25, 864 (after Plaintiff failed to show for multiple Parole Outpatient Clinic appointments in 2014, his case was closed); *see, e.g.*, AR 850 (in December 2013, Plaintiff was cooperative, his speech was clear, he was fully oriented, his affect was normal, and he responded appropriately to questions); AR 837 (in September 2014, Plaintiff was cooperative, his speech was clear, he was fully oriented, his affect was normal, and he responded appropriately to questions); AR 821 (in October 2014, Plaintiff was cooperative, alert, and oriented with clear speech)). Such inconsistencies undermined the

reliability of the consultative examiners' opinions and calls into question the significant limitations they endorsed. *See* 20 C.F.R. § 416.927(c) (when evaluating opinions, ALJ appropriately considers supportability, consistency with evidence in the record as a whole, and factors that tend to support or undermine the opinion, among other things).

With respect to Dr. Franklin, the Court finds the ALJ adequately considered the diagnoses listed in Dr. Franklin's report. However, a diagnosis does not establish any particular functional limitations or that an impairment is disabling. *Matthews v. Shalala*, 10 F.3d 678, 680 (1993) ("The mere existence of an impairment is insufficient proof of a disability" because the "claimant bears the burden of proving that an impairment is disabling") (citation omitted). In his motion, Plaintiff did not dispute the ALJ's finding that his only severe mental impairments were mood disorder and marijuana dependence, AR 19, and he has waived any argument to the contrary. *See Morales v. Astrue*, 252 F. App'x 843, 844 (9th Cir. 2007) (claimant waived argument that the ALJ failed to properly consider his impairments at step two "by failing to raise that argument in any prior proceeding") (citing *Warre v. Comm'r*, 439 F.3d 1001, 1007 (9th Cir. 2006)). Merely listing diagnoses from Dr. Franklin's report does not show any error in the ALJ's evaluation of that report. *See Matthews*, 10 F.3d at 680.

Plaintiff also contends the ALJ and the State agency psychologists did not consider his "antisocial behavior" and history of incarceration for serious crimes. Pl.'s Mot. at 9. However, the Court's review of the record shows the ALJ and the State agency psychologist did in fact consider his treatment records while he was incarcerated and on parole, among other information. AR 20-26, 135-36, 151-53. The relevant inquiry when determining disability is whether Plaintiff is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." 42 U.S.C. 1382c(a)(3)(A). Thus, the ALJ and the State agency psychologists appropriately focused on evidence relevant to Plaintiff's impairments, his functional capacity, and his ability to work, not his criminal past, his alleged "inability to meet the demands of adulthood," or other issues that Plaintiff raises.

While Plaintiff may disagree with the ALJ's findings, the Court finds the record as a whole constitutes substantial evidence supporting the ALJ's decision. Further, even "where the evidence

is susceptible to more than one rational interpretation," the Court must uphold the ALJ's decision. *Magallanes*, 881 F.2d at 750 (citing *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)). It is the ALJ, not the Court, that must resolve determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities. *Batson*, 359 F.3d at 1196. Thus, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Accordingly, because provided specific and legitimate reasons for his evaluation of the medical opinions, and substantial evidence supports the ALJ's findings, the decision must be affirmed.

**D.      RFC and Vocational Expert Testimony**

As noted above, the ALJ determined Plaintiff has the capacity to perform medium work with certain exceptions. AR 22. Plaintiff argues the ALJ used an inaccurate RFC when posing hypothetical questions to the vocational expert, failed to include all his mental limitations, and incorrectly identified Plaintiff's education level. Pl.'s Mot. at 12. Specifically, Plaintiff argues the ALJ "incorrectly found that [he] 'has at least a high school education'" and "used the incorrect education level in the RFC questions posed" to the expert. *Id.* Plaintiff contends the record "includes multiple references to [him] not graduating from high school or receiving a GED" and that he "testif[ied] under oath that he did not graduate from high school." *Id.*

Plaintiff further argues the ALJ erred in crediting the opinions of the State agency consultants because the hypotheticals presented to the vocational expert are at odds with their assessed limitations. *Id.* The ALJ presented the mental RFC as: "simple routine repetitive tasks in a low stress job environment requiring only occasional decision-making; only occasional changes in work setting; only occasional requirements for exercising judgment; no fast-paced production work; and no interaction with the public; and no tandem tasks with coworkers." AR 59-60. However, Plaintiff notes the state agency consultants determined he would be limited to "nonconfrontational" supervision; service that is not "persistent;" and only two-hour concentration segments, and as such argues that "none of these limitations were included in the RFC presented

by the ALJ." Pl.'s Mot. at 13.

Finally, Plaintiff argues the ALJ failed to discuss the vocational expert's testimony as to acceptable levels of being off task (AR 65), tardiness (AR 68), absenteeism (AR 69), and acceptable interaction with a supervisor (AR 70), yet "the medical evidence of record documents that [he] has at least moderate if not marked limitations" because he

> was fired from his last job for excessive tardiness. AR 19. The state agency consultants determined [Plaintiff] is moderately limited in the ability to accept criticism. AR 138. Similarly, the consultants determined [Plaintiff] can only maintain concentration for two hours at a time. *Id.* The ALJ does not explain how these limitations or his finding that Plaintiff is employable square with the testimony of the [vocational expert].

Pl.'s Mot. at 13.

In response, Defendant argues the ALJ properly assessed Plaintiff's RFC because the medical evidence supports his decision and, to the extent there is evidence that does not, the ALJ appropriately discounted those limitations based on his consideration of the opinion evidence as a whole. Def.'s Mot. at 19-20.

### 1. Legal Standard

RFC is the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed by considering all the relevant evidence in a claimant's case record. *Id.*; *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). When a case is before an ALJ, it is the ALJ's responsibility to assess a claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). "Generally, the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." 20 C.F.R. § 416.927(c)(4).

### 2. Analysis

Although Plaintiff argues the ALJ erred in finding he "has at least a high school education," he testified under oath that he did not leave high school early and that he "made it up to the 12th grade." AR 82. The regulations provide that "[h]igh school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at

a 12th grade level or above." 20 C.F.R. § 416.964(b)(4). However, the Court also notes that at the first hearing, the ALJ included a "limited education" level in his hypothetical question to the vocational expert. AR 123-24. Limited education means a 7th to 11th grade education. 20 C.F.R. § 416.964(b)(3). Based on this definition, the record is somewhat unclear as to Plaintiff's education level. Regardless, even if the ALJ mischaracterized Plaintiff's education in his hypothetical question at the second hearing, Plaintiff has failed to meet his burden of showing how any such error was harmful. *See Molina*, 674 F.3d at 1111. The ALJ found that Plaintiff's past work was unskilled, he had no transferrable skills, and he could perform only unskilled jobs. AR 27. Plaintiff has not shown that a lower education level would have required a different outcome. *Compare* 20 C.F.R. § 416.964(b)(3) ("Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs.") *with* 20 C.F.R. § 416.964(b)(4) ("High school education and above. . . . We generally consider that someone with these educational abilities can do semi-skilled through skilled work."). As the ALJ did not determine that Plaintiff could perform semi-skilled or skilled jobs, any error regarding whether Plaintiff completed any of the 12th grade is harmless because the ALJ limited Plaintiff to unskilled jobs. *See Molina*, 674 F.3d at 1115 (error is harmless where "the ALJ would have reached the same result absent the error").

Next, in disputing the RFC finding, Plaintiff contends the ALJ erred by omitting certain limitations in the State agency consultants' opinions, specifically: that he could concentrate for two hours at a time; that he was capable of casual and infrequent public contact, including "service that was not persistent"; and that his supervision "should be direct and nonconfrontational." Pl.'s Mot. at 12-13. However, the ALJ did not need to specify that Plaintiff could concentrate for two-hour intervals because the RFC included "normal breaks," which occur every two hours, and no additional two-hour restriction was necessary. AR 22; SSR 96-9p (breaks occur "at approximately 2-hour intervals."); *Braithwaite v. Comm'r of Soc. Sec.*, 2011 WL 1253395, at *5 n.4 (E.D. Cal. Mar. 31, 2011) (normal breaks occur approximately every two hours). Second, because the RFC specified that Plaintiff could not interact with the general public, the ALJ did not need to address

the State agency consultant's opinion that he could have casual and infrequent public contact, including "service that was not persistent." AR 22, 138. Third, the opinion that Plaintiff's supervision "*should* be direct and nonconfrontational" was a recommendation, not a specific functional limitation. AR 138 (emphasis added). The opinion also reflects that Plaintiff can interact with co-workers and supervisors. *Id.* An ALJ is not required to address physician recommendations regarding conditions that might be optimal but are not necessary for a claimant to work. *See Harms v. Berryhill*, 692 F. App'x 861, 862 (9th Cir. 2017) ("An examining psychologist's and a reviewing psychologist's recommendations regarding a supportive work setting did not amount to concrete work-related limitations in function that the [ALJ] was required to include in his finding of the claimant's [RFC]."); *Valentine*, 574 F.3d at 691-92 (physician's opinion that claimant "is less likely to have difficulty with" certain tasks was a recommendation, not a statement that claimant was only capable of the recommended tasks).

Finally, the Court notes that RFC is an administrative finding, not a medical determination, and need not match any physician's opinion. *See* 20 C.F.R. § 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . the final responsibility for deciding these issues is reserved to the Commissioner"); *Vertigan*, 260 F.3d at 1049 ("[i]t is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity"). The ALJ is responsible for assessing a claimant's RFC based on the record as a whole. *See* 20 C.F.R. § 416.945(a).

Accordingly, the Court finds substantial evidence supports the ALJ's RFC assessment and the ALJ's decision must be affirmed. [8]

---

[8] Plaintiff also contends the ALJ's hypothetical question to the vocational expert "failed to include all of his mental limitations," but he raises the same arguments as discussed above, namely that the ALJ did not properly assess his RFC. Pl.'s Mot. at 12. However, as the Court already found that his argument lacks merit, his arguments regarding the vocational expert's testimony fail for the same reasons. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) ("In arguing the ALJ's hypothetical was incomplete, [claimant] simply restates her argument that the ALJ's RFC finding did not account for all her limitations because the ALJ improperly discounted her testimony and the testimony of medical experts. As discussed above, we conclude the ALJ did not.").

**E.    Third Step - Medical Equivalence**

At the third step, the ALJ determined Plaintiff has an impairment or combination of impairments that meet or equals the Listing of Impairments.  AR 20.  In making this determination, the ALJ performed the psychiatric review technique set forth in 20 C.F.R. § 416.920a, which requires an ALJ to rate a claimant's degree of functional limitation (none, mild, moderate, marked, or extreme) in activities of daily living, social functioning, and concentration, persistence, or pace, and to determine whether the claimant has had repeated episodes of decompensation.[9]  20 C.F.R. § 416.920a(c).  The ALJ found Plaintiff had only mild limitations in activities of daily living because he was able to take care of personal needs, use public transportation, and do household chores such as vacuuming, mopping, sweeping, dusting, laundry, and dishes.  AR 20.  With respect to social functioning, the ALJ pointed out that Plaintiff presented as polite, calm, and cooperative during evaluations, had no difficulties interacting with providers or others at group therapy, and engaged in social activities and sports.  AR 20-21.  The ALJ did find Plaintiff had moderate limitations in social functioning due to paranoia and difficulty with crowds.  AR 20.  The ALJ then determined Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace, but discounted the limitations asserted by consultative examiners for his social security benefits claim because those reports were inconsistent with evidence in the record as a whole.  AR 21.  Finally, the ALJ found Plaintiff did not have any episodes of decompensation.  *Id.*

Plaintiff argues the ALJ "failed to address medical equivalence in any meaningful way" because although he found Plaintiff has severe impairments, he "never analyzes how [his] mental impairments interact with or exacerbate his physical impairments."  Pl.'s Mot. at 14.  He contends the ALJ's discussion of medical equivalence "is limited to conclusory statements to the effect that [Plaintiff] does not meet or equal any listing."  *Id.*  In response, Defendant argues the ALJ properly evaluated Plaintiff's impairments at step three.  Def.'s Mot. at 3.

---

[9] These four areas are collectively called the "paragraph B" criteria.  20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 12.00C (in assessing severity, "[w]e assess functional limitations using the four criteria in paragraph B of the listings").

### 1.    Legal Standard

As noted above, at step three in the sequential process, an ALJ must consider whether a claimant's conditions meet or equal any of the impairments outlined in the Listing of Impairments, 20 C. F. R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  The Listing of Impairments describes impairments that "would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity."  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original).  If a claimant's "impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled."  *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1520(d).  The claimant bears the burden of establishing a prima facie case of disability under the Listing of Impairments.  *See Thomas*, 278 F.3d at 955; *see also* 20 C.F.R. § 404.1520(a)(4)(iii).

An impairment meets a listing when all the medical criteria required of that listing is satisfied.  20 C.F.R. § 404.1525(c)(3); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) ("To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim.").  "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment. . . ."  *Id.* (quoting 20 C.F.R. § 404.1526(a)).

"If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment."  *Id.* (citing 20 C.F.R. § 404.1526(a)).  However, "'[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three.'"  *Id.* at 1100 (quoting 20 C.F.R. § 404.1526(a)).

### 2.    Analysis

Although Plaintiff disagrees with the ALJ's findings at step three, he does not point to any evidence showing the ALJ erred or that his impairments—either singly or in combination—met or equaled the requirements of a specific listing.  *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir.

2001) (claimant "offered no theory, plausible or otherwise, as to how his [impairments] combined to equal a listed impairment" and did not "point[ ] to evidence that shows that his combined impairments equal a listed impairment."). Regardless, having reviewed the record, the Court finds the ALJ performed the required review under 20 C.F.R. § 416.920a.

As to the ALJ's determination that Plaintiff had only mild limitations in activities of daily living, the record supports his finding that he was able to take care of personal needs, use public transportation, and do household chores such as vacuuming, mopping, sweeping, dusting, laundry, and dishes. AR 20, 814, 855-56; *see also* AR 301-04 (Plaintiff performed personal care activities, prepared simple meals daily, performed household chores, went out on his own, shopped in stores, played sports, and spent time with family). Although Plaintiff asserts that he watches television all day, Pl.'s Mot. at 15, the evidence showed that he was able perform various daily activities with no more than mild limitations, as the ALJ found. AR 20.

With respect to social functioning, Plaintiff contends the ALJ erred because, while he cites to Parole Outpatient Clinic records to support the claim that Plaintiff has no social problems, the ALJ "ignores the diagnosis of Antisocial Personality Disorder in the same records." Pl.'s Mot. at 15. The record does reflect a diagnosis of Antisocial Personality Disorder. AR 728. However, a diagnosis alone is insufficient to establish an impairment is severe, much less that an impairment is presumptively disabling. *See* 20 C.F.R. § 416.925(d) ("[I]mpairment(s) cannot meet the criteria of a listing based only on a diagnosis."); *Leddy v. Berryhill*, 702 F. App'x 647, 648 (9th Cir. 2017) ("The existence of a mental impairment alone does not establish functional limitation or disability") (citing *Matthews*, 10 F.3d at 680); *Chapple v. Berryhill*, 2017 WL 3721584, at *9 (N.D. Cal. Aug. 29, 2017) (rejecting claimant's reliance on diagnoses, noting "to be severe, a claimant must prove that her impairment significantly limited her ability to perform basic work activities"). Plaintiff also cites to self-reported parole problems "due to inappropriate behavior" to rebut this finding, Pl.'s Mot. at 15 (citing AR 855), but his statements are unsupported and inconsistent with other evidence. *See, e.g.*, AR 729 (following Plaintiff's parole in January 2010, a provider reported that he was cooperative, attentive, and pleasant); AR 711 (in April 2013, while Plaintiff was on parole, a provider reported he was alert, polite, and calm).

1      In determining that Plaintiff had moderate difficulties in maintaining concentration,

2   persistence, or pace, the ALJ discounted the limitations asserted by the consultative examiners,

3   Drs. Howard and Franklin, finding their reports were inconsistent with evidence in the record as a

4   whole.  AR 21.  Instead, the ALJ determined that the evidence showed Plaintiff was able to work

5   after his disability onset, he responded well to medication, and treating providers did not report

6   cognitive difficulties or other significant mental health symptoms.  AR 21, 23-26; *see, e.g.*, AR

7   719 (Plaintiff reported medications were helpful, he denied side effects, was doing well on parole,

8   he was not depressed or agitated, and he was alert, polite, and calm with well-organized speech);

9   AR 721 (Plaintiff was alert and oriented, he was polite and engaged in treatment, his behavior was

10   appropriate; his speech was clear and organized, his mood and affect were normal, and he was

11   calm with no delusions or other unusual behavior); AR 865-66 (Plaintiff "continues to do very

12   well on his current medications," with no depression, anger problems, mood swings, or side

13   effects); AR 781-82 (Plaintiff was cooperative, his speech was clear, he was fully oriented, his

14   affect was normal, and he responded appropriately to questions); AR 798-99 (same); AR 804

15   (Plaintiff was cooperative, alert, and oriented with clear speech); AR 821 (same); AR 837

16   (Plaintiff was cooperative, his speech was clear, he was fully oriented, his affect was normal, and

17   he responded appropriately to questions); AR 850 (same).  Although Plaintiff disagrees with the

18   ALJ's evaluation of the evidence, he does not cite any treatment records to rebut the ALJ's

19   findings other than the consultative examiners' reports.  However, as discussed above, the ALJ

20   properly discounted those opinions.  Since the record reflects no more than moderate mental

21   limitations, the Court finds the ALJ properly evaluated the relevant evidence.  Finally, since

22   Plaintiff did not have at least two marked limitations or one marked limitation and repeated

23   episodes of decompensation, he did not meet a mental disorder listing.  *See* 20 C.F.R., Pt. 404,

24   Subpt. P, App'x 1, § 12.00C.  Plaintiff does not dispute this finding in his motion.

25      Plaintiff argues generally that the ALJ failed to comply with step three because "[i]n

26   determining whether a claimant equals a listing under step three . . ., the ALJ must explain

27   adequately his evaluation of alternative tests and the combined effects of the impairments.'"  Pl.'s

28   Mot. at 14 (quoting *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)).  However, the Ninth

Circuit has since clarified that "*Marcia* simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under" any particular heading. *Kennedy*, 738 F.3d at 1178 (citing *Lewis*, 236 F.3d at 513). Here, the ALJ discussed and evaluated the evidence regarding Plaintiff's mental symptoms and limitations throughout his decision. AR 20-26. Nothing further was required.

Moreover, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or [to] compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). Plaintiff points to no such evidence here, nor does he identify in his motion any particular listing that he meets or equals, much less explain how he meets or equals it. Merely alleging ALJ error does not warrant remand. *See Molina*, 674 F.3d at 1111 (a court "may not reverse an ALJ's decision on account of an error that is harmless" and "'the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination'") (quoting *Shinseki*, 556 U.S. at 409).

Accordingly, the Court finds the ALJ's determination that Plaintiff's impairments did not meet or equal a listed impairment was supported by substantial evidence in the record as a whole, and the decision must be affirmed.

## F.     Plaintiff's Credibility

Finally, Plaintiff argues the ALJ failed to consider the entire case record and provide clear and convincing reasons for finding his testimony was not credible. Pl.'s Mot. at 15.

### 1.     Legal Standard

Congress expressly prohibits granting disability benefits based solely on a claimant's subjective complaints. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. § 416.929(a) (an ALJ will consider all of a claimant's statements about symptoms, including pain, but statements about pain or other symptoms "will not alone establish" the claimant's disability). "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to [the Social Security Act]." *Fair v. Bowen*, 885

F.2d 597, 603 (9th Cir. 1989). An ALJ is, however, required to make specific credibility findings. *See* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (the credibility finding "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight").

A two-step analysis is used when determining whether a claimant's testimony regarding their subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, it must be determined "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc); 42 U.S.C. § 423(d)(5)(A)). A claimant does not need to "show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

Second, if the claimant has met the first step and "there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen*, 80 F.3d at 1281). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. Courts must not engage in second-guessing, where the ALJ "has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record." *Fair*, 885 F.2d at 604. However, "a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing *Lester*, 81 F.3d at 834); *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) (per curiam), *superseded by statute on other grounds as recognized in Bunnel v. Sullivan*, 912 F.2d 1149, 1154 (9th Cir. 1990) ("'Excess pain' is, by definition, pain that is unsupported by objective medical findings.").

Factors an ALJ may consider in weighing a claimant's credibility include: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his]

testimony and [his] conduct, claimant's daily activities, [his] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Thomas*, 278 F.3d at 958-59 (quoting *Light*, 119 F.3d at 792). An ALJ's credibility finding must be properly supported by the record, and sufficiently specific to ensure a reviewing court he did not "arbitrarily discredit" a claimant's subjective testimony. *Id.* at 958 (citing *Bunnell*, 947 F.2d at 345-46).

### 2. Analysis

Here, the ALJ acknowledged Plaintiff's self-reported symptoms, noting that he reported difficulty with concentration, attention, and memory; he got distracted and could not complete tasks; he felt anxious, irritable, and angry; he did not get along with others; and his medication caused side effects. AR 22. However, the ALJ found that Plaintiff's allegations were not entirely consistent with the medical evidence and other evidence. AR 22-26. The ALJ noted that treating providers documented largely normal mental status findings, which were contrary to Plaintiff's claims of disabling mental symptoms. AR 22-25; *see, e.g.*, AR 719, 721, 781-82, 798-99, 804, 821, 837, 850, 889, 894, 906, 918; *see also Molina*, 674 F.3d at 1113 (ALJ properly relied on objective clinical findings, including that claimant was alert and oriented, maintained good eye contact, did not appear excessively anxious, spoke coherently and fluently, smiled appropriately, and was congenial, to discount claimant's allegations of disabling anxiety).

In addition to the inconsistencies between Plaintiff's allegations and the objective clinical evidence, the ALJ identified other bases for discounting his allegations. *See* 20 C.F.R. § 416.929(c)(3) (after considering consistency with the objective medical evidence, the ALJ considers whether and to what extent the claimant's subjective statements are consistent with "other evidence" in the record, such as treatment, daily activities, and other factors). In this regard, the ALJ pointed out that Plaintiff's impairments were stable and his symptoms were generally controlled when he took his medications. AR 23; *see, e.g.*, AR 711-31. An ALJ properly considers effectiveness of treatment when evaluating symptoms. 20 C.F.R. § 416.929(c)(3)(iv); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("Such evidence of medical treatment successfully relieving symptoms can undermine a claim of disability" based on

a mental impairment); *Warre*, 439 F.3d at 1006 ("Impairments that can be controlled effectively with medication are not disabling.").  Although Plaintiff asserted that he experienced medication side effects that impaired his ability to work, his providers did not document significant side effects.  *See, e.g.*, AR 711 (Plaintiff denied side effects); AR 712 (same); AR 865 (same)); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (ALJ properly excluded medication side effects where "[t]here were passing mentions of the side effects of [the claimant's] medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with [his] ability to work.").

As an additional basis for discounting Plaintiff's allegations, the ALJ noted that he engaged in activities of daily living that were inconsistent with his allegations of disability, such as performing his own personal care activities, playing sports, and doing household chores such as vacuuming, mopping, sweeping, dusting, laundry, and dishes.  AR 20, 24, 814, 855-56; *see also* AR 301-04 (Plaintiff stated he had no problem with personal care, prepared simple meals daily, performed household chores, went out on his own, shopped in stores, played sports, and spent time with family).  Daily activities are relevant to evaluating a claimant's symptoms.  20 C.F.R. § 416.929(c)(3)(i); *Molina*, 674 F.3d at 1112-13 (ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms").  And, even if Plaintiff's activities were not particularly extensive, the ALJ's conclusion that he was not as limited as he claimed was a reasonable and valid basis for discounting his self-reported symptoms.  *Molina*, 674 F.3d at 1112-13 ("Even where those activities suggest some difficulty in functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *Valentine*, 574 F.3d at 694 (the ALJ properly determined that the claimant "demonstrated better abilities than he acknowledged in his written statements and testimony" and that his "non-work activities . . . are inconsistent with the degree of impairment he alleges").

The ALJ also pointed out that Plaintiff's claim of hallucinations was inconsistent with his treatment records, which reflected largely normal mental status findings and no reports of hallucinations of any kind.  *See* AR 719, 721, 781-82, 798-99, 804, 821, 837, 850, 889, 894, 906,

918.  In determining credibility, an ALJ properly considers whether there are any such inconsistencies in the evidence.  20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence.").

Plaintiff argues the ALJ should not have considered his inconsistent mental health care because he "was indigent at all times relevant to the case."  Pl.'s Mot. at 16.  However, the ALJ did not specifically discount Plaintiff's self-reported symptoms for that reason.  Regardless, notwithstanding his indigence, when Plaintiff did seek treatment, providers reported normal mental status findings.  *See* AR 850 (Plaintiff was cooperative, his speech was clear, he was fully oriented, his affect was normal, and he responded appropriately to questions); AR 837 (Plaintiff was cooperative, his speech was clear, he was fully oriented, his affect was normal, and he responded appropriately to questions); AR 821 (Plaintiff was cooperative, alert, and oriented with clear speech)).

Plaintiff also argues the ALJ relied on "isolated instances of improvement" to discount his subjective symptom allegations.  Pl.'s Mot. at 16.  To the contrary, a review of the ALJ's decision shows he considered the record as a whole, with treating providers reporting normal mental status findings and responsiveness to treatment.  See AR 22-25, 719, 721, 781-82, 798-99, 804, 821, 837, 850, 889, 894, 906, 918.  Plaintiff's contention that the ALJ relied on "isolated" portions of the record is without merit.  *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (ALJ pointed to specific evidence in the record, including numerous medical reports, in discounting the claimant's complaints).

Finally, Plaintiff has failed to explain how any error requires reversal.  The ALJ found Plaintiff had limitations from his mental impairments and assessed a mentally-restrictive RFC: he could perform only simple, routine, repetitive tasks in a job environment requiring only occasional decision-making, occasional changes in the work setting, and occasional exercise of judgment; he was precluded from performing fast-paced production work; and he could not interact with the general public or perform tandem tasks with co-workers.  AR 22.  Plaintiff has failed to explain how this restrictive RFC assessment was inadequate to accommodate the mental symptoms that

the record supported.  *See Valentine*, 574 F.3d at 692 n.2 (court appropriately "reject[ed] any invitation to find that the ALJ failed to account for [the claimant's] injuries in some unspecified way").

Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence and free of legal error.  Because he appropriately discounted Plaintiff's allegations, the ALJ's decision must be affirmed.

## VI.    CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Cross Motion.  The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: March 20, 2019

THOMAS S. HIXSON
United States Magistrate Judge